CASE NO. 15-3240
_____

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
_____

## CARIN MILLER

**Plaintiff-Appellant,**

**v.**

## EXPERIAN INFORMATION SOLUTIONS, INC., ET AL,

**Defendants-Appellees.**
_____

On Appeal from the
United States District Court
for the Southern District of Ohio
Western Division at Dayton
Honorable Thomas M. Rose
District Court Case No. 3:13-cv-090
_____

## REPLY BRIEF OF APPELLANT
## CARIN MILLER
_____

SAM HAN
DeWOSKIN LAW FIRM, LLC
24 Lenox Pointe NE
Atlanta, Georgia 30324
Telephone: (404) 987-0026
sam@atlantatrial.com

JOHN A. FISCHER
DEARIE, FISCHER & DAME, LLC
70 Birch Alley
Suite 240
Dayton, Ohio 45440
Telephone: (947) 306-6402
jaf@dfdohiolaw.com

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... iii

ARGUMENT ........................................................................................ 1

    I.     The October 2013 Report Is Governed by §1681g ................. 2

          A.     The Statute (and Not TransUnion) Defines Disclosures to Consumers Under §1681g........................................... 2

          B.     The Undisputed Evidence from TransUnion Shows That Miller Ordered the October 2013 Report From TransUnion ... 4

    II.    TransUnion Falsely Alleges That Miller Offers No Evidence of a TransUnion Violation of the FCRA ....................................... 7

    III.   TransUnion Falsely Asserts That Miller Offers No Evidence of Willful Non-Compliance........................................................ 10

    IV.   TransUnion's Opposition Confuses the Main Issues by Concentrating on Irrelevant Issues.................................................. 11

CONCLUSION ....................................................................................... 14

CERTIFICATE OF COMPLIANCE.......................................................... 15

CERTIFICATE OF SERVICE ................................................................. 16

i

# TABLE OF AUTHORITIES

## Cases

*Ferrarelli v. Federated Fin. Corp. of America*, 2009 U.S. Dist. LEXIS 7286 (S.D. Ohio 2009) (copy attached as Addendum 1 to TransUnion's Opposition).. 10

*Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638 (S.D. Ala. 2007)................ 1, 2, 3

*Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961 (6th Cir. 1998) ...... 3

*Lewis v. Ohio Professional Electronic Network LLC*, 144 F. Supp. 2d 1049 (S.D. Ohio 2002) ...................................................... 3

*Spector v. Equifax Information Services, LLC*, 338 F. Supp. 2d 378 (D. Conn. 2004) ...................................................... 1, 2, 3

## Statutes

15 U.S.C. § 1681g........................................................ *passim*

## ARGUMENT

Trans Union, LLC ("TransUnion") can call its disclosure a tuna sandwich; however, that does not make it so.  The statute controls; not TransUnion's nomenclature.  Miller's position (supported by legal authority) is simple: when released to consumers, disclosures are "disclosures to consumers" under 15 U.S.C. §1681g ("§1681g").  (See, Brief of Appellant Carin Miller ("Miller's Brief"), Doc. No. 18, filed Jun. 15, 2015, at p. 13 (citing §1681g, *Spector v. Equifax Information Services, LLC*, 338 F. Supp. 2d 378 (D. Conn. 2004), and *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007).)

TransUnion provides no legal authority to refute Miller's position.  (See, Defendant-Appellee Trans Union, LLC's Brief in Opposition to Plaintiff-Appellant Miller's Appeal Brief ("TransUnion's Opposition"), Doc. No. 30, filed Sep. 28, 2015, *passim*.)  Instead, TransUnion argues that simply calling its disclosures Credit Monitoring Report and disclaiming them as disclosures to consumers in a Service Agreement renders §1681g inapplicable, even though those disclosures are to consumers.  (See, *e.g.*, TransUnion's Opposition, pp. 9 and 28.)

This Court should reject TransUnion's absurd position and REVERSE the lower court's erroneous ruling.  As shown in detail below, the October 2013 Report (RE 63-2) is a "disclosure to the consumer" under §1681g, and simply calling the

1

October 2013 Report a "Credit Monitoring Report" cannot render §1681g

inapplicable to the October 2013 Report.

## I.    The October 2013 Report Is Governed by §1681g

TransUnion concedes that "disclosures to consumers" are "defined by FCRA

§ 1681g[.]"  (TransUnion's Opposition, pp. 20-21.)  Thus, there is no dispute that

the statute (and not TransUnion's nomenclature) governs.

The October 2013 Report is a "disclosure to the consumer" that is governed

by §1681g because: (a) TransUnion concedes all of the facts to show that Miller

(the consumer) ordered her own report from TransUnion; and (b) TransUnion (not

TransUnion Interactive ("TUI")) released the disclosure to Miller (the consumer).

### A.    *The Statute (and Not TransUnion) Defines Whether Disclosures to Consumers Are Governed by §1681g*

As an initial matter, §1681g (and not TransUnion's nomenclature) dictates

whether or not the October 2013 Report is a "disclosure to the consumer."

First, §1681g is titled "disclosures to consumers" and the plain language of

the statute shows that §1681g (and not some other section) governs disclosures to

consumers.

Second, *Spector v. Equifax Information Services, LLC*, 338 F. Supp. 2d 378

(D. Conn. 2004) and *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala.

2007) confirm the plain language of the statute. *Spector* holds that, when released to a consumer, the file is termed a "consumer disclosure." (Miller's Brief, pp. 13, 16, and 22.) *Johnson* holds that a "consumer disclosure" is the file revealed to the consumer. (Miller's Brief, p. 16.) In other words, "disclosures to consumers" means precisely what it says: information disclosed to the consumer. TransUnion does not (and cannot) cite to any legal authority holding otherwise.

Third, the plain-language interpretation of §1681g upholds the purpose of the Fair Credit Reporting Act ("FCRA"). Specifically, the FCRA's purpose as a consumer protection statute requires liberal construction of the FCRA in favor of the consumer. (Miller's Brief, pp. 11, 12, 15, 17, and 19, citing *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961 (6th Cir. 1998) and *Lewis v. Ohio Professional Electronic Network LLC*, 144 F. Supp. 2d 1049 (S.D. Ohio 2002).)

Fourth, and finally, even TransUnion apparently agrees that disclosures to consumers are defined by §1681g. (TransUnion's Opposition, pp. 20-21 ("Consumer Disclosure, <u>as defined by the FCRA § 1681g</u>" (emphasis supplied)).)

At bottom, TransUnion never disputes the common-sense interpretation of *Spector* or *Johnson*, namely, that <u>information disclosed to a consumer is a "disclosure to the consumer" under §1681g</u>.

3

**B.    The Undisputed Evidence from TransUnion Shows That Miller Ordered the October 2013 Report from TransUnion**

TransUnion concedes all of the facts to show that the consumer (Miller) ordered her own October 2013 Report (not someone else's report) from TransUnion (not TUI), thereby bringing the October 2013 Report within the statutory definition of "disclosures to consumers."

First, TransUnion admits that "Miller first entered her identifying information" and "verf[ied] her identity and receiv[ed] her credit report." (TransUnion's Opposition, p. 8.)  Thus, there is no dispute that the consumer (Miller) ordered her own credit file information, and not someone else's information.

Second, TransUnion insists that the October 2013 Report is a "3-in-1 report that includes credit information from the 'Big Three' CRAs, <u>TransUnion</u>, Equifax, and Experian" (TransUnion's Opposition, p. 7, fn. 8, emphasis supplied.)  Clearly, the 3-in-1 report was TransUnion's disclosure to Miller (the consumer).

Third, TransUnion admits that the June 2014 Report and the July 2014 Report both show the October 2013 Report being disclosed by TransUnion to Miller.  (TransUnion's Opposition, p. 10 ("TransUnion <u>does</u> have a record of Miller making a request for [the October 2013 Report], on October 3, 2013, in the

4

form of inquiries appearing on future consumer reports."))  Furthermore,

TransUnion never disputes that those inquiries were made <u>to TransUnion</u> by the

consumer (Carin Rebecca Miller).  (See, June 2014 Report, RE 63-3, at

PageID#943; July 2014 Report, RE 63-4, at PageID#952.)  Specifically, the June

2014 Report (RE 63-3, at PageID#935), which TransUnion admits is from

TransUnion (and not from TUI), shows:[1]

---

Case: 3:13-cv-00090-TMR-MJN Doc #: 63-3 Filed: 08/22/14 Page: 9 of 9  PAGEID #: 943

Page: 9 of 9

Consumer Credit Report for CARIN R. MILLER          File Number: 333383027   Date Issued: 06/04/2014

**TRANSUNION INTERACTIVE I** ( 100 CROSS ST, STE 202, SAN LUIS OBISP, CA 93401, (888) 567-8688)
Requested On: 10/03/2013

**CARIN REBECCA MILLER via TRANSUNION INTERACTIVE I** ( 100 CROSS ST, STE 202, SAN LUIS OBISP, CA 93401, (888) 567-8688 )
Permissible Purpose: CREDIT MONITORING
Requested On: 10/03/2013

---

The October 2013 Report clearly shows a disclosure to the consumer (the second

entry on PageID#943, showing "Carin Rebecca Miller").

     The July 2014 Report (RE 63-4, PageID#952), which TransUnion again

admits is from TransUnion (and not from TUI), confirms that the October 2013

Report was a disclosure to the consumer.  Specifically, the relevant portion of the

---

[1]    Illustration excerpted from RE 63-3, PageID#943, in compliance with Fed. R.
       App. P. 32(a)(1)(C).

July 2014 Report shows:[2]

```
SM SERVICING (P O BOX 9500, WILKES BARRE, PA 18773-9500, (703) 810-5811 )
Requested On: 11/15/2013

TRANSUNION INTERACTIVE I (100 CROSS ST, STE 202, SAN LUIS OBISP, CA 93401, (888) 567-8688 )
Requested On: 10/03/2013

CARIN REBECCA MILLER via TRANSUNION INTERACTIVE I (100 CROSS ST, STE 202, SAN LUIS OBISP, CA 93401, (888) 567-8688 )
Permissible Purpose: CREDIT MONITORING
Requested On: 10/03/2013
```

Thus, the evidence shows: (a) the consumer (Carin Rebecca Miller) ordered her own credit file information; (b) TransUnion (not TUI) has a record of that order from the consumer; and (c) TransUnion (and not TUI) provided the October 2013 Report to the consumer.  At a minimum, Miller's evidence shows that the October 2013 Report was disclosed to the consumer by TransUnion, thereby creating a genuine issue of material fact that should have precluded summary judgment.

Finally, it is irrelevant that TransUnion disclosed the October 2013 Report to Miller "via TUI."  The means or facility by which TransUnion furnished the October 2013 Report to Miller is irrelevant (whether via TUI, via FedEx®, via the United States Postal Service, via homing pigeon, or via any other disclosure mechanism).  See, 15 U.S.C. §1681a(f) (noting that CRAs can use "any means or facility of interstate commerce for the purpose of preparing or furnishing consumer

---

[2]    Illustration excerpted from RE 63-4, PageID#952, in compliance with Fed. R. App. P. 32(a)(1)(C).

reports.")  Relevant to this appeal is the evidence showing that <u>TransUnion</u> disclosed the October 2013 Report <u>to the consumer</u>, irrespective of the means by which the October 2013 Report was disclosed.

TransUnion argues that the Service Agreement disclaims that the disclosure to the consumer is governed by the FCRA.  (TransUnion's Opposition, p. 9 ("The credit reports provided or requested through our Site are not intended to constitute the disclosure of information by a credit reporting agency as required by the Fair Credit Reporting Act or similar law.")  However, as explained above, TransUnion cannot redefine what the FCRA expressly defines and TransUnion cannot disclaim its statutorily imposed obligations, whether by the Service Agreement or otherwise.

In view of Miller's undisputed evidence, Miller now addresses TransUnion's willful violation of §1681g.

## II.    TransUnion Falsely Alleges That Miller Offers No Evidence of a TransUnion Violation of the FCRA

TransUnion falsely alleges that "Miller offers no evidence of a TransUnion violation of the FCRA."  (TransUnion's Opposition, p. 20).  In doing so, TransUnion falsely asserts that Miller offered the District Court no facts to rebut TransUnion's arguments or to meet Miller's burden of proof.  (*Id.*)

First, as shown above, the October 2013 Report fits squarely within the statutory definition of "disclosures to consumers" because the October 2013 Report was ordered <u>by the consumer</u> and <u>disclosed to the consumer</u> by TransUnion. Thus, Miller offered irrefutable facts to show that, by ordering the October 2013 Report, Miller ordered her own "disclosure to the consumer" under §1681g. The disclaimer in the Service Agreement does nothing to change the statutory definition of "disclosures to consumers."

Second, TransUnion insists that disclosures to consumers under §1681g require the inclusion of <u>every</u> promotional inquiry. (TransUnion's Opposition, p. 11 ("Promotional inquiries . . . <u>must</u> be included on Consumer Disclosures" (emphasis in original).) Thus, both Miller and TransUnion agree that, should the October 2013 Report be a disclosure to the consumer under §1681g, the October 2013 Report was required to include <u>all</u> promotional inquiries.

Third, Miller offered irrefutable evidence that TransUnion omitted <u>every</u> promotional inquiry (not just a single inquiry) from the October 2013 Report.[3]

---

[3]  TransUnion asserts that "Miller's entire claim against TransUnion consisted of the allegation that TransUnion omitted from a Credit Monitoring Report . . . a <u>single</u> limited promotional inquiry." (TransUnion's Opposition, pp. 5 and 11). This is false. Miller specifically alleged that TransUnion omitted from her

(TransUnion's Opposition, p. 8 ("Credit Monitoring Reports contain the same information found in credit reports provided to third parties," i.e., promotional inquiries are never included in Credit Monitoring Reports).)  Indeed, TransUnion concedes that <u>none</u> of the numerous promotional inquiries were included in the October 2013 Report.  (TransUnion's Opposition, p. 12.)

Consequently, when TransUnion omitted <u>every</u> promotional inquiry from the October 2013 Report,[4] TransUnion necessarily violated §1681g.

Contrary to TransUnion's false assertion, Miller clearly offered admissible and irrefutable evidence to show that: (a) the October 2013 Report is governed by §1681g ("disclosures to consumers"); (b) the October 2013 Report required inclusion of <u>every</u> promotional inquiry; and (c) TransUnion omitted <u>every</u> promotional inquiry, thereby violating the FCRA.  Certainly, Miller's evidence was

---

consumer disclosure <u>every</u> promotional inquiry.  (Amended Complaint, RE 37-1, ¶ 31.)

[4]  TransUnion argues that it "does not omit promotional inquiries from Credit Monitoring Reports" because "Credit Monitoring Reports would never contain promotional inquiries in the first place[.]"  (TransUnion's Opposition, p. 12.) TransUnion's distinction makes no difference in the outcome.  "Credit Monitoring Reports" fall squarely within the definition of "disclosures to consumers" under §1681g and, therefore, require the disclosure of <u>every</u> promotional inquiry.  Consequently, irrespective of whether TransUnion fails to include promotional inquiries or whether TransUnion omits promotional inquiries, TransUnion violates §1681g.

sufficient to survive summary judgment on the factual issue of whether or not TransUnion violated the FCRA.

## III.  TransUnion Falsely Asserts That Miller Offered No Evidence of Willful Non-Compliance

Next, TransUnion falsely asserts that Miller offered <u>no</u> evidence of any willful non-compliance by TransUnion.  (TransUnion's Opposition, p. 23.)  As correctly noted in *Ferrarelli v. Federated Fin. Corp. of Am.*, 2009 U.S. Dist. LEXIS 7286 (S.D. Ohio 2009), "[w]illfulness under the FCRA is generally a question of fact for the jury."

Here, Miller's evidence shows that TransUnion <u>deliberately</u> omitted <u>every</u> promotional inquiry from TransUnion's disclosure to the consumer, thereby willfully violating §1681g.[5]

First, the omission of <u>every</u> promotional inquiry is not a chance occurrence or an occasional mistake.  One or two missing promotional inquiries may be unintentional.  However, the absence of <u>every</u> promotional inquiry is intentional and systematic.

---

[5]  Both parties agree that actual damages are irrelevant in a willfulness claim under §1681n.  This is because §1681n seeks to punish willful non-compliance; not make whole an injured plaintiff.  As such, Miller does not address TransUnion's irrelevant arguments relating to actual damages.

Second, and more important, TransUnion's own witness testified that promotional inquiries were intentionally omitted from the October 2013 Report because TransUnion never considered Credit Monitoring Reports to be disclosures to consumers.  (See, TransUnion's Opposition, p. 11, citing Simms Depo [RE 93-1], 96:11-97:7.)  TransUnion's only excuse is ignorance of the law, which is an inadequate excuse.  In other words, based on TransUnion's own disclaimer (which cannot trump the statutory definition), TransUnion intentionally omitted <u>all</u> promotional inquiries from disclosures to consumers.

At bottom, TransUnion never disputes that it <u>intentionally</u> omitted <u>all</u> promotional inquiries from the October 2013 Report.  Thus, axiomatically, if the October 2013 Report is a "disclosure to the consumer" (which it is), then TransUnion's deliberate omission of all promotional inquiries from that disclosure is a willful violation of §1681g.

Miller has offered ample evidence of TransUnion's willful non-compliance of §1681g.  At a minimum, Miller has offered sufficient evidence of willfulness to survive summary judgment.

## IV.    TransUnion's Opposition Confuses the Main Issues by Concentrating on Irrelevant Issues

Finally, TransUnion's Opposition concentrates on irrelevant issues, thereby

distracting from the main point.[6]

TransUnion argues that Credit Monitoring Reports are not consumer reports. (TransUnion's Opposition, pp. 25-26.) TransUnion's argument is irrelevant. The relevant issue is whether the October 2013 Report is governed by the FCRA (specifically §1681g). As explained above, the October 2013 Report meets the statutory definition of "disclosures to consumers" under §1681g. Thus, no amount of redefinition by TransUnion can alter the statutory definition and no disclaimer in any Service Agreement can absolve TransUnion of its obligation to make complete disclosures to consumers under §1681g. It is absurd to believe that the FCRA does not govern Credit Monitoring Reports, which contain the same information as consumer reports (which the FCRA does govern).

TransUnion also argues that TUI is not a CRA. (TransUnion's Opposition, pp. 26-27.) It is absurd to believe that an entity that peddles Credit Monitoring Reports is unregulated by the FCRA. Significantly, whether or not TUI is a CRA is irrelevant because Miller's evidence shows the October 2013 Report originating

---

[6]    TransUnion argues that Miller raises several points for the first time on appeal. Miller notes that the lower court's ruling is based on issues that neither party raised below (e.g., neither party argued that TUI was not a CRA; neither party argued that the FCRA did not govern the October 13 Report; etc.). Because the lower court's ruling was based on issues that were never argued below, Miller addressed those issues in her opening brief.

from TransUnion (not TUI). (Miller's Brief, pp. 5, 6, 9, 13, 20, and 22, citing TransUnion's evidence [RE 63-3 and RE 63-4].) The fact that TransUnion used TUI (or any other means) as the vehicle to deliver the disclosure to the consumer makes no difference in the outcome.[7] Consequently, the evidence showing that the October 2013 Report is a disclosure to the consumer, which originated with TransUnion and disclosed to the consumer by TransUnion, is sufficient to show genuine issues of material fact on which of the entities (TransUnion or TUI) disclosed the October 2013 Report to the consumer.

Finally, TransUnion argues that the FCRA does not prohibit Credit Monitoring Reports. (TransUnion's Opposition, pp. 27-28.) Again, TransUnion misses the point. The relevant issue is not whether the FCRA prohibits Credit Monitoring Reports. The relevant issue is whether the FCRA prohibits TransUnion from intentionally omitting promotional inquiries from its disclosures to consumers by calling those disclosures "Credit Monitoring Reports" and disclaiming that those disclosures are "disclosures to consumers" under the FCRA.

_____

[7] Indeed, it makes no difference if TransUnion used FedEx®, the U.S. Postal Service, UPS®, or TUI as the vehicle for delivering the October 2013 Report. The undisputed facts show that the October 2013 Report came from TransUnion, and TransUnion's own records show that TransUnion knew that the October 2013 Report was disclosed to the consumer.

Simply stated, TransUnion is prohibited from circumventing the FCRA by renaming its reports or disclaiming them as being "disclosures to consumers."

## CONCLUSION

Because the plain language of the statute, legal precedent, public policy, and common sense uniformly show that the October 2013 Report is a disclosure to a consumer under §1681g and TransUnion admits that it deliberately omitted promotional inquiries from this disclosure to the consumer, this Court should REVERSE the erroneous grant of summary judgment to TransUnion.

October 14, 2015          Respectfully Submitted,

/s/ Sam Han
SAM HAN (Georgia Bar No. 322284)
DeWOSKIN LAW FIRM, LLC
24 Lenox Pointe NE
Atlanta, Georgia 30324
Telephone:  (404) 987-0026
sam@atlantatrial.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(A) because it is no more than fifteen (15) pages, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman font.

October 14, 2015         Respectfully Submitted,

<u>/s/ Sam Han</u>
SAM HAN (Georgia Bar No. 322284)
DeWOSKIN LAW FIRM, LLC
24 Lenox Pointe NE
Atlanta, Georgia 30324
Telephone:  (404) 987-0026
sam@atlantatrial.com

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2015, a copy of this document was filed electronically and served via the Court's CM/ECF system on all counsel of record who have made an appearance in this matter.

October 14, 2015             Respectfully Submitted,


/s/ Sam Han
SAM HAN (Georgia Bar No. 322284)
DeWOSKIN LAW FIRM, LLC
24 Lenox Pointe NE
Atlanta, Georgia 30324
Telephone:   (404) 987-0026
sam@atlantatrial.com